*432 OPINION BY JUDGE
BROBSON
Presently before the Court for disposition is the petition for review of the Pennsylvania Department of Human Services (DHS), challenging a June 1, 2015 final determination (Final Determination) of the Pennsylvania Office of Open Records (OOR) under the Right-to-Know Law (RTKL).[1] In the Final Determination, the OOR granted the appeal of Respondent Pennsylvanians for Union Reform, Inc. (PFUR) and directed DHS to provide PFUR records containing the addresses of all direct-care workers (DCWs) pursuant to PFUR’s RTKL request. For the reasons that follow, we affirm the Final Determination in part, vacate it in part, and remand this matter to the OOR for further proceedings.
I. BACKGROUND
On February 27, 2015, Governor Tom Wolf issued Executive Order No. 2015-05, entitled “Participanh-Directed Home Care Services” (Executive Order). (Reproduced Record (R.R.) at 9a-15a.) The Executive Order focused on individuals who receive, and the DCWs who provide in-home personal (non-medical) care. As per the Executive Order, a DCW is “a person who provides Participant-Directed Services in a Participant’s home under a Home Care Service Program.” (Id. at 10a.) It further defines “Participant-Directed Services” as:
[P]ersonal assistance services, respite, and Participant-Directed community supports or similar types of services provided to a senior or a person with a disability who requires assistance and wishes to hire, terminate, direct and supervise the provision of such care pursuant to the Home Care Service Programs, provided now and in the future, to (i) meet such person’s daily living needs, (ii) ensure such person may adequately function in such person’s home, and (iii) provide such person with safe access to the community. Participants Directed Services does not include any care provided by a worker employed by an agency as defined by Section 802.1 of the Health Care Facilities Act[, Act of July 19, 1979, P.L. 130, added by the Act of July 12, 1980, P.L. 655, as amended, 35 P.S. § 448.802a].
(Id. at 11a (emphasis added).) Home Care Service Programs include the following programs administered by DHS’s Office of Long Term Living: (a) the Aging Waiver Program, (b) the Attendant Care Waiver Program, (c) the CommCare Waiver Program, (d) the Independence Waiver Program, (e) the OBRA Waiver Program, and (f) the Act 150 Program.
The Executive Order directed the Secretary of DHS to compile a monthly list of “the names and addresses of all Direct Care Workers (‘DCW List’) who, within the previous three (3) months, have been paid through a Home Care Service Program that provides Participant-Directed Services.” (Id. at 14a.) It further directed that “the DCW List shall not include the name of any participant, any designation that a Direct Care Worker is a relative of a participant, or any designation that the Direct Care Worker’s home address is the same as a participant’s address.” (Id.) Finally, it directed DHS to provide the DCW List to an employee organization that satisfies certain criteria set forth in the Executive Order.
DHS maintains a contract with a third party, PPL, which assists participants in managing their employer-employee relationships with them DCWs.[2] To satisfy its *433 obligations under the Executive Order, DHS directed PPL to generate the DCW List. Following this directive, DHS generated the list in the form of an Excel spreadsheet, which included the contact information for approximately 20,000 DCWs. DHS maintains that the DCW List is the “only record in [its] possession that sets forth the names and home addresses of these [DCWs].” (R.R. at 40a.) Nonetheless, DHS acknowledges that the information on the DCW List is information that DHS houses within its internal computer systems. (Id. at 37a.) Pursuant to the Executive Order, and upon concluding that the employee organization satisfied the criteria set forth in the Executive Order, DHS provided the DCW List to the United Health Care Workers of Pennsylvania (UHCWP).
On March 9, 2015, PFUR submitted its RTKL request to DHS, seeking, among other records,[3] “[t]he names and addresses of all Direct Care Workers who, within the previous three (3) months of the [snapshot] date of this request, have been paid through a Home Care Service Program that provides Participanb-Directed Services.” (Id. at 7a (second alteration in original) (footnote omitted).) In essence, by parroting the corresponding language from the Executive Order, PFUR sought the same information that the Executive Order directed DHS to assemble in the monthly DCW List. DHS thus treated the request as if it were a request for a particular document, the DHS List, and not a request for information.[4]
A DHS Agency Open Records Officer (Agency Officer) denied the request pursuant to what DHS refers to as the “caregiver exemption” in subsection (ii)(B) of Section 708(b)(28) of the RTKL, 65 P.S. § 67.708(b)(28), which exempts from access:
A record or information:
(i) identifying an individual who applies for or receives social services; or
(ii) relating to the following:
[[Image here]]
(B) an individual’s application to receive social services, including a record or information related to an agency decision to grant, deny, reduce or restrict benefits, including a quasi-judicial decision of the agency and the identity of a caregiver or others who provide services to the individual ....
(Emphasis added.) The Agency .Officer reasoned that “[t]he services that direct care workers are paid to provide to DHS’[s] recipients are ‘social services’” under the RTKL[5] and that information relating to “ ‘the identity of a caregiver or others who provide [social] services to the individual’ who receives such services is ‘exempt from access’” under the RTKL. (R.R. at 19a (third alteration in original) *434 (quoting Section 708(b)(28)(ii) of the RTKL).) Explaining that the DCW List maintained by DHS contained the names and addresses of approximately 20,000 DCWs, the Agency Officer denied the request on the basis that each person on the list is a caregiver and each entry regarding names and addresses identified the caregiver. Thus, she determined that “[t]he effect of [Section 708(b)(28)(ii)(B) of the RTKL is to remove the DCW List from that definition.”[6] (Id.)
PFUR appealed to the OOR, challenging DHS’s denial only to the extent it refused to release to PFUR the home addresses of all DCWs. (R.R. at 4a.) In response, DHS[7] contended that the home address of a DCW is “related to” each DCW’s identity and, therefore, is information exempt from disclosure under the statutory “caregiver” exemption. (R.R. at 44a-45a.) In support, DHS offered two affidavits. Megan Beis-sel, a paralegal intern in the DHS Office of General Counsel, stated that she was instructed to select 60 non-consecutive addresses from a spreadsheet containing the DCW List. She typed each selected address into the “WhitePages.com” website to determine whether it would disclose the name of the associated DCW resident. In this regard, she found that “[f]or addresses in Philadelphia, WhitePages.com disclosed the names of 22 of the 30 Direct Care Workers,” and with regard to Pennsylvania addresses outside Philadelphia, 16 of 30 names were disclosed. (R.R. at 64a.) Additionally, Jennifer Slothower, a paralegal in the DHS Office of General Counsel, attested that when she engaged in the same efforts, WhitePages.com disclosed 16 of 30 names associated with Philadelphia addresses and 18 of 30 names for addresses outside of Philadelphia. (R.R. at 72a.) Both Ms. Beissel and Ms. Slothower asserted that, in their experience, “when a search on a service such as WhitePag-es.com is unsuccessful, searches using other websites (such as Spokeo.com) arid/or search engines such as Google can often result in discovery of the missing information.” (Id. at 64a, 72a.)
In its Final Determination, the OOR rejected DHS’s position. Citing Housing Authority of the City of Pittsburgh v. Van Osdol, 40 A.3d 209 (Pa. Cmwlth. 2012), the OOR reasoned that “addresses alone will not ‘identify’ caregivers or those who provide social services.” (Id. at 100a.) In response to the affidavits filed by Ms. Beissel and Ms. Slothower, the OOR found that DHS did not demonstrate that disclosure of the addresses “ ‘will necessarily or so easily lead to disclosure of [the identities] that production of one is tantamount to production of the other,’ ” because the affiants: (1) had varying degrees of success; and (2) knew the names on the DCW List when performing their WhitePages.com searches. (Id. at 101a (alteration in original) (quoting Van Osdol, 40 A.3d at 216).) Reasoning that simply because the DCWs’ names “may be obtained by other means where their address is [sic] disclosed is not sufficient to withhold the addresses from public disclosure,” the OOR reversed the Agency Officer’s ruling with respect to addresses alone. (Id. (emphasis in original).) This ap *435 peal followed.[8]
II. DISCUSSION
The OOR found that our decision in Van Osdol controls the disposition of this case. In Van Osdol, a requestor sought access under the RTKL to “the addresses and owner names for all Section 8 properties administered by the [Housing Authority of the City of Pittsburgh (Authority) ].” Van Osdol, 40 A.3d at 211. The Authority denied the request, because, among other reasons, the records sought constituted information identifying an individual who applies for or receives social services under Section 708(b)(28)(i) and (ii)(A) of the RTKL.[9] The OOR determined that the requested information did not fall within Section 708(b)(28)(i)’s exemption, because it encompassed only the names of the owners of Section 8 properties and property addresses, not the names of tenants.
After the trial court affirmed, on further appeal to this Court, we evaluated whether the addresses of what are referred to as “Section 8”[10] properties and names of “Section 8” property owners were exempt under Section 708(b)(28)(i) and/or (ii)(A) of the RTKL, on the basis that the “disclosure of such information would necessarily identify the recipients and the type of social services they receive.” Id. at 215. In reversing the trial court, we reasoned that “[t]he requested information does not itself identify individuals who apply for or receive social services or the type of social services received by those individuals,” and, therefore, the information sought did not fall within the purview of Section 708(b)(28)(i) or (ii)(A) of the RTKL. Id. at 216.
In Van Osdol, the Court clearly held that the requested information was not facially exempt from disclosure under either Section 708(b)(28)(i) or (ii)(A) of the RTKL and that there was a dearth of record evidence to show that disclosure of the requested information would necessarily lead to the disclosure of exempt information. We left for another day, however, the question of how evidence of the latter should be evaluated when considering a RTKL request for records that are not facially exempt:
There may be some cases in which the evidence establishes that disclosure of public records which are not facially exempt will necessarily or so easily lead to disclosure of protected information that production of one is tantamount to production of the other, or that disclosure of the one is highly likely to cause the very harm the exemption is designed to prevent, but no such evidence was presented here. Accordingly, at this time we need not attempt to define in further detail the standards which must be met to allow withholding of records which are not facially exempt.
Id. (emphasis added) (footnote omitted).
DHS challenges the OOR’s reasoning in its Final Determination on two primary *436 grounds. First, DHS contends that Van Osdol does not apply because the information sought here — home addresses of DCWs — is facially exempt because it is “related to” the DCWs’ identities and, therefore, is exempt from disclosure pursuant to the plain meaning of the “caregiver exemption,” protecting “[a] record or information ... relating to ... the identity of a caregiver” under Section 708(b)(28)(ii)(B) of the RTKL. Alternatively, if not facially exempt, DHS contends that, unlike the Authority in Van Osdol, DHS presented sufficient evidence before the OOR in the form of affidavits, to establish that disclosure of the home address of a DCW is tantamount to disclosure of the identity (name) of the DCW. PFUR responds that Van Osdol does apply and that DHS’s evidence before the OOR was insufficient to support DHS’s claim, under Van Osdol, that disclosure of the home address of a DCW “will necessarily or so easily lead to disclosure of’ the DCW’s identity that it, too, must be exempt from disclosure.
The legal question before the Court in this appeal is whether the address of a DCW alone is exempt under Section 708(b)(28)(ii)(B) of the RTKL. In answering that question, we reject DHS’s characterization of this statutory language as a “caregiver” exemption. Section 708(b)(28)(ii)(B) is not, as DHS claims, an isolated, stand-alone exemption under the RTKL. It is part and parcel of the single, but multipart, exemption clearly intended to protect a record or information relating to an individual who seeks social services, whether successful or not — ie., an applicant for or recipient of social services. The entirety of the exemption provides:
A record or information:
(i) identifying an individual who applies for or receives social services; or
(ii) relating to the following:
(A) the type of social services received by an individual-,
(B) an individual’s application to receive social services, including a record or information related to an agency decision to grant, deny, reduce or restrict benefits, including a quasi-judicial decision of the agency and the identity of a caregiver or others who provide services to the individual-, or
(C) eligibility to receive social services, including the individual’s income, assets, physical or mental health, age, disability, family circumstances or record of abuse.
Section 708(b)(28) of the RTKL (emphasis added). The obvious intended beneficiary of the exemption can readily be obfuscated through an effort to parse the single exemption into several stand-alone exemptions. See Bowling v. Office of Open Records, 990 A.2d 813, 824 (Pa. Cmwlth. 2010) (en banc) (holding exemptions in RTKL are to be narrowly construed), aff'd, 621 Pa. 133, 75 A.3d 453 (2013).
In Van Osdol, the Court evaluated the application of the Section 708(b)(28) exemption through this prism. The concern in Van Osdol was whether disclosure of the address and owner of all Section 8 housing would be tantamount to disclosing exempt information relating to the actual social services recipients — ie., the tenants and recipients of housing assistance. As noted above, in Van Osdol we held that the requested information was not facially exempt from disclosure under either Section 708(b)(28)(i) or (ii)(A) of the RTKL and that there was a dearth of record evidence to show that disclosure of the requested information would necessarily lead to the disclosure of exempt information. Disclosure of the owners and addresses of all Section 8 housing simply did not equate to the disclosure of the identity of a Section 8 tenant or the social services that the indi *437 vidual receives, and the Authority in Van Osdol failed to present evidence to the contrary.
This case is on par with Van Osdol What DHS characterizes as a “caregiver exemption” is a participle phrase within a clause found in a subparagraph of a paragraph that exempts from disclosure a record or information personal to an individual applicant or recipient of social services. Read in context, the clause protects from disclosure information that would identify an individual’s caregiver. PFUR’s request does not seek disclosure of the identity of an individual's caregiver; rather, it seeks the addresses of all DCWs. None of the DHS affiants asserted that disclosure of all of these addresses would disclose, let alone compromise, the exempt nature of a or the protected individual’s caregiver. No affiant claimed that upon receipt of the addresses, PFUR, or anyone for that matter, could link an address on the list to a particular DCW for a particular applicant or recipient of social services with any greater success, for example, than one could link a listing of all physicians in Pennsylvania who accept Medicaid reimbursement to a particular recipient of medical assistance. In other words,, like Van Osdol, the requested information here is not facially exempt, and DHS has failed to adduce evidence to show that disclosure of all DCW home addresses “will necessarily or so easily lead to disclosure of’ exempt information — i.e., the identity of a particular individual’s caregiver. Accordingly, we find no error in the OOR’s conclusion that a list of the home addresses of all DCWs is not exempt information under Section 708(b)(28) of the RTKL. In that respect, we affirm the OOR’s Final Determination.
After oral argument in this matter, however, the Pennsylvania Supreme Court issued its decision in The Pennsylvania State Education Association v. Department of Community and Economic Development, 148 A.3d 142 (Pa. 2016) (PSEA III). In PSEA III, the Supreme Court, reversing an en banc decision of this Court, held that Pennsylvanians enjoy a constitutionally-protected right of privacy in their home addresses. Under PSEA III, before releasing a home address that does not fall within an express exemption under the RTKL, the OOR must balance the individual’s right to privacy in his or her home address against the public benefit in the dissemination of that information. The OOR may only order disclosure where the public benefit outweighs the individual privacy interest. PSEA III, 148 A.3d at 156-58.
In light of PSEA III, the Court is constrained to vacate the portion of the Final Determination that ordered DHS to provide PFUR the home addresses of all DCWs and remand the matter to the OOR to perform the balancing test required under PSEA III. The right to informational privacy in one’s home address is grounded in, inter alia, Article I, section 1 of the Pennsylvania Constitution. Id. at 150-51. It is a right that belongs to each Pennsylvanian, that exists independent of the exemptions found in the RTKL, and that each agency must consider before disclosing personal information that falls within the scope of the right. In an ideal situation, we would rely on those who claim the right to assert it timely. Because of the lack of meaningful procedural due process protections afforded to those whose private information is sought through the RTKL,[11] that obligation must fall on the agencies that hold this information and have the wherewithal, in the context of the RTKL, to protect it from disclosure.
*438 III. CONCLUSION
For the reasons set forth above, we will affirm the Final Determination to the extent that it rejected DHS’s claim that the requested information was exempt under Section 708(b)(28) of the RTKL. We nonetheless will vacate the portion of the Final Determination that ordered DHS to provide PFUR the home addresses of all DCWs and will remand this matter to the OOR. On remand, the OOR must reconsider the portion of its decision ordering disclosure of the DCWs’ home addresses in light of the Supreme Court’s decision in PSEA III.
ORDER
AND NOW, this 8th day of February, 2017, it is hereby ordered that the June 1, 2015 final determination of the Pennsylvania Office of Open Records (OOR) is AFFIRMED in part and VACATED in part. This matter is REMANDED to the OOR for further proceedings consistent with the accompanying opinion.
Jurisdiction relinquished.

. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-.3104.

. As noted above, the Executive Order only pertains to participant-directed, not agency-directed, services.

. Although the request consisted of three items, item number 1 regarding DCWs is the only portion of the request that is presently before the Court.

. Recently, this Court declared invalid and void certain portions of the Executive Order, including that portion that required DHS to compile the DCW List. See Markham v. Wolf, 147 A.3d 1259 (Pa. Cmwlth. 2016) (en banc), appeal docketed, (Pa., No, 109 MAP 2016, filed October 24, 2016).

. "Social services” are defined as
[c]ash assistance and other welfare benefits, medical, mental and other health care services, drug and alcohol treatment, adoption services, vocational services and training, occupational training, education services, counseling services, workers’ compensation services and unemployment compensation services, foster care services, services for the elderly, services for individuals with disabilities and services for victims of crimes and domestic violence.
Section 102 of the RTKL, 65 P.S. § 67.102.

. Nonetheless, the Agency Officer advised that the DHS Secretary was willing to provide a copy of the DCW List, subject to PFUR’s acceptance of a list of conditions, which PFUR refused.

. DHS filed a joint response to PFUR’s appeal (OOR Docket No. AP 2015-0723) and a separate appeal of The Fairness Center (OOR Docket No. AP 2015-0673), seeldng similar information, DHS requested consolidation of the separate appeals, but the OOR denied the consolidation request.

.On appeal from the OOR in a RTKL case, this Court’s standard of review is de novo and our scope of review is plenary. Bowling v. Office of Open Records, 621 Pa. 133, 75 A.3d 453, 477 (2013). There is nothing, however, in the RTKL that would prevent a reviewing court from adopting the findings of fact and conclusions of law of an appeals officer when appropriate. Office of Open Records v. Ctr. Twp., 95 A.3d 354, 369 (Pa. Cmwlth. 2014).

. These provisions exempt disclosure of the identity of "an individual who applies for or receives social services” and "information ... relating to ... the type of social services received by an individual.” 65 P.S. § 67.708(b)(28)(i), (ii)(A).

. Housing is subsidized by the federal government under Section 8 of the United States Housing Act (Section 8), as amended, 42 U.S.C. § 1437f.

. See PSEA III, 148 A.3d at 158-59.