IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Housing Authority,    :
       Appellant  :
           :
   v.      :
           : No. 2391 C.D. 2015
Stephen Polaha     : Argued: October 19, 2017


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE J. WESLEY OLER, JR., Senior Judge


OPINION BY
JUDGE COVEY       FILED: November 21, 2017


   This Right-To-Know Law (RTKL)[1] case is before us following a remand from our Supreme Court in *Chester Housing Authority v. Polaha*, 166 A.3d 1231 (Pa. 2017). In *Polaha*, the Supreme Court granted a petition for allowance of appeal limited to applying its recent test set forth in *Pennsylvania State Education Association v. Commonwealth of Pennsylvania, Department of Community and Economic Development*, 148 A.3d 142 (Pa. 2016) (*PSEA III*) to Chester Housing Authority's (Authority) constitutional challenge to protect from disclosure the addresses where Housing Choice Voucher Program (HCVP) participants reside in Chester Township (Township). Thereafter, the Supreme Court remanded the matter for this Court's consideration based upon *PSEA III*, which was decided after this Court's order in *Chester Housing Authority v. Polaha* (Pa. Cmwlth. No. 2391 C.D. 2015, filed August 11, 2016) (*Chester I*).[2]

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.
[2] The Philadelphia Housing Authority filed an Amicus Brief in support of the Authority's position.

## Background

The HCVP is a federally-funded housing program regulated by the United States Department of Housing and Urban Development (HUD), pursuant to Section 8 of the United States (U.S.) Housing Act of 1837 (Section 8).[3] *See* Reproduced Record (R.R.) at 374a, 523a. "The Authority administers the HCVP, which provides rental assistance to low-income families." *Chester I*, slip op. at 1.

On October 14, 2014, Township Solicitor Stephen Polaha (Polaha) made an RTKL request to the Authority for "[a] list of all properties in the Township . . . where the tenant occupying the dwelling on the property receives HCV[P a]ssistance . . . from the [Authority], the list to include the address of the property, and the name and address of the property owner." R.R. at 57a. In the letter transmitting his RTKL request, Polaha represented:

> [T]here are a number of rental houses in the Township, in particular in the Toby Farms area, where the tenants are receiving assistance from the [Authority]. The Township believes that these properties are not being inspected by the [Authority] and, further, that there is no coordination with the Township with respect to the obtaining of a Certificate of Occupancy before the unit is occupied by the tenant.

R.R. at 58a. On October 21, 2014, the Authority granted Polaha's request and provided Polaha a chart listing 74 properties by unit identification number, census track number, owner's name, owner's address, whether a certificate of occupancy had been issued for the property, and the date on which the property was last inspected. *See* R.R. at 60a-63a, 66a, 527a.

By October 24, 2014 letter, Polaha notified the Authority that its response included the property owners' addresses, but not "the property addresses in the [Township] which are owned by the individuals and entities set forth on the list

---

[3] 42 U.S.C. § 4437f.

2

[the Authority] previously provided." R.R. at 64a. The Authority clarified in an October 27, 2014 letter that its October 21, 2014 response "should have stated 'Request Granted in part/Denied in part,'" R.R. at 66a, because

> [i]n accordance with the [RTKL], the [Authority] will withhold information that is exempt from disclosure by law. The home addresses of participants in the [HCVP] are not subject to disclosure as outlined in Section 708(b) [of the RTKL]. This information is exempt from disclosure under Sections 708(b)(6)[4] and 708(b)(28)[5] [of the RTKL, 65 P.S. § 67.708(b)(6), (28)].

R.R. at 66a. On October 30, 2014, Polaha appealed to the Office of Open Records (OOR), which afforded the parties the opportunity to submit their legal arguments. *See* R.R. at 69a.

---

[4] Section 708(b)(6)(i) of the RTKL exempts from access personal identification information, including:

> (A) A record containing all or part of a person's [s]ocial [s]ecurity number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.
>
> . . . .

65 P.S. § 67.708(b)(6)(i).

[5] Section 708(b)(28) of the RTKL exempts from disclosure records or information:

> (i) identifying an individual who applies for or receives social services; or
>
> (ii) relating to the following:
>
> (A) the type of social services received by an individual;
>
> . . . .
>
> (C) eligibility to receive social services, including the individual's income, assets, physical or mental health, age, disability, family circumstances or record of abuse.

65 P.S. § 67.708(b)(28).

3

By November 4, 2014 letter, the Authority's counsel expounded to the OOR that since the Authority's public housing program and the HCVP provide social services to participants, whose eligibility is determined based on their income, assets, physical or mental health, age, disability, family circumstances and record of abuse, "[g]ranting [Polaha's] request will undermine the intent of Section 708(b)(28) [of the RTKL (relating to information identifying social service recipients)] by specifically identifying those receiving assistance under the federally-administered HCVP." R.R. at 75a.

On November 10, 2014, Polaha offered the OOR an affidavit, wherein, he represented, in pertinent part:

> 4. That [the Authority's] letter of November 4, 2014 does not identify with particularity and by way of affidavit what 'social services', as set forth in the definition thereof, are provided to [HCVP] recipients.
>
> 5. That [Polaha] has not asked for information relating to a participant's income, assets, physical or mental health, age, disability, family circumstances or record of abuse and the providing of the requested information will not result in the disclosure of that type of information.
>
> 6. That [Polaha] is not requesting a record or information identifying an individual who applies for or receives social services, or a record or information relating to the type of social services received by an individual, an individual's application to receive social services or eligibility to receive social services.
>
> 7. That the information [Polaha] is seeking is a record of properties in the [Township] which are owned by individuals or entities who, acting as landlords, rent those properties to tenants who receive [HCVP] assistance from the [Authority].
>
> 8. That while it is true that the information requested will likely lead to knowledge of the names of tenants who are receiving [HCVP] assistance from the [Authority,] assuming, arguendo, that Section 708(b)(8) [sic] of the

4

> [RTKL] applies, which it does not, [the Authority] has conceded that that information is already known to the Township.

R.R. at 92a.

On November 25, 2014, the OOR granted Polaha's RTKL request and ordered the Authority to disclose all responsive records. Citing *Delaware County v. Schaefer*, 45 A.3d 1149 (Pa. Cmwlth. 2012),[6] the OOR reasoned that "[b]ecause home addresses are not universally protected under [RTKL Section 708(b)(6)(i)'s personal identification exemption,] the Authority has not demonstrated that this exemption protects the requested access from public access." Authority Br. Tab E, OOR Final Det. at 4. Relying upon *Housing Authority of the City of Pittsburgh v. Van Osdol*, 40 A.3d 209 (Pa. Cmwlth. 2012), the OOR explained that since Polaha "seeks the addresses of tenants who are receiving social services . . . , but does not seek the names of these individuals," the requested records would not identify the tenants as social services recipients and, thus, the Authority has not demonstrated that the addresses are exempt from disclosure under Section 708(b)(28) of the RTKL. OOR Final Det. at 5. The OOR further declared, based on *Van Osdol*, "[t]he fact that the names of these individuals may be obtained by other means . . . is not sufficient to withhold the addresses from public disclosure."[7] OOR Final Det. at 5. On December 29, 2014, the Authority appealed from the OOR's final determination to the trial court and requested a *de novo* hearing.

---

[6] The *Delaware County* Court held that home addresses of individuals not specifically referenced in Section 708(b)(1) of the RTKL "are . . . not categorically exempt under the [personal security exception]." *Delaware County*, 45 A.3d at 1153. Therefore, in deciding whether home addresses are exempt from public access the judicially-created test balancing the public's benefit against the personal security interests protected by Section 708(b)(1) of the RTKL must be conducted. *See id.* at 1156 n.10.

[7] The *Van Osdol* Court held: "That properly[-]disclosed public records may enable the requestor or others, by doing further research, to learn information that is protected from disclosure is not generally a sufficient basis to refuse disclosure." *Id.* at 216.

5

The trial court conducted a *de novo* hearing on April 30, 2015, at which Polaha and the Authority's HCVP director Mary Margaret Militello (Militello) testified. Before the trial court, the Authority further argued that RTKL Section 708(b)(1) (relating to personal security)[8] and RTKL Section 708(b)(30) (relating to home addresses of minors)[9] exempted the tenants' addresses from public access.[10] *See* R.R. at 585a-587a. The trial court affirmed the OOR's final determination on October 22, 2015. The Authority appealed to this Court which, by August 11, 2016 order, upheld the trial court's decision, stating: "We agree with Polaha that in accordance with [*Commonwealth v.*] *Duncan*, [817 A.2d 455 (Pa. 2003),] there is no expectation of privacy attached to the requested addresses. In the absence of a recognized property right, the disclosure of an address does not violate an HCVP recipient's constitutional rights." *Chester I*, slip op. at 10-11. The Authority filed a petition for allowance of appeal (Petition) with the Pennsylvania Supreme Court which, by February 21, 2017 order, granted the Petition "limited to [the Authority's] constitutional challenge," and then vacated and remanded that portion of this Court's August 11, 2016 order "for consideration in light of [*PSEA III*]."[11] Supreme Ct. 2/21/17 Order. *PSEA III* was decided on October 18, 2016.

---

[8] Section 708(b)(1) of the RTKL exempts from public access "[a] record, the disclosure of which . . . would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. § 67.708(b)(1). This provision has become known as the personal security exception.

[9] Section 708(b)(30) of the RTKL prohibits public access to records "identifying the name, home address or date of birth of a child 17 years of age or younger." 65 P.S. § 67.708(b)(30).

[10] The Authority was permitted to raise additional exemptions not previously specified. *See Levy v. Senate of Pa.*, 65 A.3d 361 (Pa. 2013).

[11] In *Duncan*, the Pennsylvania Supreme Court affirmed the Superior Court's decision allowing a bank to be subpoenaed for the name and address of a criminal defendant corresponding to an automated teller machine used near a crime scene. The *Duncan* Court determined that the defendant had no reasonable expectation of privacy in that information because, "in this day and age where people routinely disclose their names and addresses to all manner of public and private entities," it is readily available to the public and, thus, is not entitled to constitutional protection. *Id.* at 466.

6

**Discussion**

Initially, it is well-settled that "[t]he RTKL is remedial in nature and 'is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions.'" *Pennsylvania Dep't of Educ. v. Bagwell*, 131 A.3d 638, 646 (Pa. Cmwlth. 2015) (quoting *Pa. State Police v. McGill,* 83 A.3d 476, 479 (Pa. Cmwlth. 2014)). Accordingly, Section 301(a) of the RTKL requires that "[a] Commonwealth agency[12] shall provide public records in accordance with [the RTKL]." 65 P.S. § 67.301(a). Section 102 of the RTKL defines "public record," in pertinent part, as "[a] record . . . of a Commonwealth . . . agency that . . . is not exempt under [S]ection 708 [of the RTKL]." 65 P.S. § 67.102. If "the requested information is exempt under Section 708(b) [of the RTKL], the information is not a 'public record' and is exempt from disclosure in its entirety."[13] *Dep't of Labor & Indus. v. Simpson*, 151 A.3d 678, 684 (Pa. Cmwlth. 2016).

---

Approximately nine weeks after this Court issued the *Chester I* decision, the *PSEA III* Court concluded that public school employees had constitutionally-protected privacy interests in their home addresses that were not outweighed by the public benefit in disclosing them. In reaching its decision, the Court held that since informational privacy "emanat[es] from Article I, Section 1 [of the Pennsylvania Constitution (relating to inherent rights of mankind)], rather than from Article 1, Section 8 [of the Pennsylvania Constitution (relating to security from searches and seizures)], *Duncan* [is] simply irrelevant to [an] analysis [of the former]." *PSEA III*, 148 A.3d at 157.

[12] Section 10 of the Housing Authorities Law states that "[a]n Authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof[.]" Act of May 28, 1937, P.L. 955, *as amended*, 35 P.S. § 1550.

[13] This Court has explained:

> [U]nder the plain language of Section 706 [of the RTKL (relating to redaction)], the redaction requirement only applies to 'public records,' and if a record falls within one of the exemptions set forth in Section 708 [of the RTKL], that record is not a public record as defined by Section 102 of the RTKL.

*Dep't of Labor & Indus. v. Simpson*, 151 A.3d 678, 684 (Pa. Cmwlth. 2016).

7

Section 708(a)(1) of the RTKL places "[t]he burden of proving that a record . . . is exempt from public access . . . on the Commonwealth agency . . . by a preponderance of the evidence." 65 P.S. § 67.708(a)(1). "Although the general provisions of the [RTKL] must be liberally construed to effect its objects, the exemptions from disclosure under Section 708(b) [of the RTKL] must be narrowly construed." *Van Osdol*, 40 A.3d at 215.

Here, the Authority took the position that the list of addresses where the Township's tenants receiving HCVP assistance (tenants) reside is exempt from disclosure under Section 708(b)(1), (6), (28) and (30) of the RTKL. The trial court and this Court disagreed and affirmed the OOR's final determination that the Authority must produce the requested information. Subsequently, while the Authority's appeal was pending before the Pennsylvania Supreme Court, *PSEA III* was decided, wherein our Supreme Court declared that **Pennsylvanians enjoy a constitutionally-protected right of privacy in their home addresses**, **which "exists independent[ly] of the exemptions found in the RTKL**, and that each agency must consider before disclosing personal information that falls within the scope of the right." *Dep't of Human Servs. v. Pennsylvanians for Union Reform, Inc.*, 154 A.3d 431, 437 (Pa. Cmwlth. 2017) (emphasis added). In *PSEA III,* the Court specifically held that "[t]he right to informational privacy[, specifically in one's home address,] is guaranteed by Article I, Section 1 of the Pennsylvania Constitution, and may not be violated [in connection with RTKL requests,] unless outweighed by a public interest favoring disclosure."[14] *PSEA III*, 148 A.3d at 158. Consequently,

---

[14] Article 1, Section 1 of the Pennsylvania Constitution states:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

> [u]nder *PSEA III*, **before releasing a home address** that does not fall within an express exemption under the RTKL,[15] **the OOR must balance the individual's right to privacy in his or her home address against the public benefit in the dissemination of that information**. The OOR may only order disclosure where the public benefit outweighs the individual privacy interest.[16]

*Dep't of Human Servs*, 154 A.3d at 437 (emphasis added).

The sole issue before this Court on remand is whether, under the circumstances presented herein, a public interest favoring disclosure outweighs the tenants' rights to privacy in their home addresses. The applicable balancing test was set forth in *Denoncourt v. State Ethics Commission*, 470 A.2d 945 (Pa. 1983)

---

Pa. Const. art. I, § 1. Our Supreme Court has adopted Section 708(b)(1) of the RTKL as "the statutory locus for constitutionally[-]required recognition of personal rights to informational privacy." *PSEA III*, 148 A.3d at 153.

[15] The RTKL contains an exception providing unconditional protection of the home addresses of judges, 65 P.S. § 67.708(b)(6)(i), law enforcement officers, *id.*[,] and children seventeen years of age or younger, 65 P.S. § 67.708(b)(30). . . . [T]hese provisions demonstrate that with respect to certain individuals, the legislature has, in essence, already performed a balancing test and determined that for these individuals, their home addresses should be protected from disclosure under the RTKL at all times.

*PSEA III*, 148 A.3d at 157 n.8.

[16] Since *PSEA III* was decided, this Court has remanded several cases for the OOR to conduct the requisite balancing test. *See State Emps.' Retirement Sys.* [*(SERS)*] *v. Fultz* (Pa. Cmwlth. No. 1603 C.D. 2016, filed March 29, 2017) (home addresses of SERS retirees who received benefits, temporarily returned to state service and retired again); *State Emps.' Retirement Sys. v. Campbell*, 155 A.3d 1153 (Pa. Cmwlth. 2017) (home addresses of SERS members in certain European countries); *Dep't of Human Servs. v. Pennsylvanians for Union Reform, Inc.*, 154 A.3d 431 (Pa. Cmwlth. 2017) (en banc) (home addresses of direct-care workers (DCWs). During oral argument of this case, both parties agreed that because this Court has the benefit of the trial court's record, the case need not be remanded to the trial court or the OOR for the balancing test to be applied.

In addition, on January 17, 2017, the Supreme Court vacated this Court's order in *State Employees' Retirement System v. Pennsylvanians for Union Reform*, 113 A.3d 9 (Pa. Cmwlth. 2015) (relating to a request for home addresses of all active, retired and inactive vested SERS members), and directed remand "for proceedings consistent with [*PSEA III*]." *See* Pa. Cmwlth. Nos. 207, 293 C.D. 2014 (which are still pending).

(plurality), wherein our Supreme Court held: "[**The**] **government's intrusion into a person's private affairs is constitutionally justified <u>when the government interest is significant</u>** *and* **<u>there is no alternate reasonable method of lesser intrusiveness to accomplish the governmental purpose</u>**."[17] *Id.* at 949 (bold, underline and italics emphasis added; footnote omitted); *see also PSEA III;*[18] *Pa. Soc. Servs. Union, Local 688 of the Serv. Emps. Int'l Union v. Commonwealth*, 59 A.3d 1136 (Pa. 2012).

Based upon our review of this record, Polaha stated in the RTKL request: "The Township believes that these properties are not being inspected by the [Authority] and, further, that there is no coordination with the Township with respect to the obtaining of a Certificate of Occupancy before the unit is occupied by the tenant." R.R. at 58a. At the *de novo* trial court hearing, Polaha represented:

> The Township . . . has an Ordinance[19] that requires inspections of tenant[-]occupied units each year, and each time there is a turnover in occupancy. **The Township wanted to make sure that the list was complete** and that it contained all the tenant[-]occupied properties that had [HCVP] recipients . . . living in them. So the [RTKL] request was submitted to request the property owner's name and address as well as the address of the properties in the [Township] that are occupied by [HCVP] recipients.

R.R. at 560a (emphasis added). Polaha admitted that his RTKL request did not specifically reference a Township investigation. *See* R.R. at 565a. The chart the

---

[17] The Supreme Court has confirmed that "[t]here must be **both** a compelling, *i.e.*, 'significant' state interest and no alternate reasonable method of lesser intrusiveness." *In re T.R.*, 731 A.2d 1276, 1280 (Pa. 1999) (emphasis added).

[18] The Supreme Court reaffirmed the balancing test relative to the RTKL and its predecessor law in *Sapp Roofing Co., Inc. v. Sheet Metal Workers' International Association, Local Union No. 12*, 713 A.2d 627 (Pa. 1998) (plurality); *Pennsylvania State University v. State Employees' Retirement Board*, 935 A.2d 530 (Pa. 2007), and *Tribune-Review Publishing Co. v. Bodack*, 961 A.2d 110 (Pa. 2008). *See PSEA III*.

[19] Although Polaha did not specify precisely which Township ordinance warranted his RTKL request, Townships and other local municipalities are customarily responsible for ensuring that rental properties are properly inspected and certificates of occupancy are issued.

10

Authority furnished Polaha with its October 21, 2014 response listed 74 properties and provided the unit number, property owner's name and address, property inspection dates and whether a certificate of occupancy had been issued for the property. *See* R.R. at 60a-63a, 66a, 527a.

Militello testified that HCVP's goal is "to provide decent, safe and affordable housing to lower income households," R.R. at 522a, by providing them "cash assistance to help them meet their lease obligations for paying rent."[20] R.R. at 530a; *see also* R.R. at 531a. She explained that HCVP is funded to support 1,566 families that also receive food stamps, Medicaid and home heating assistance. *See* R.R. at 524a, 530a. Militello expounded:

> The design of the [HCVP] differs from [p]ublic [h]ousing in that it enables families to choose where they want to live to rent in the private rental community. And this affords both choice as well as anonymity in that [they] are able to rent and be part of the fabric of a neighborhood, and not [be] identified as living in a [h]ousing [p]roject, which would identify someone as a lower income person.

R.R. at 522a-523a. She described that HCVP eligibility is based on a certification supplying the household's members, and their income, assets and expenses. *See* R.R. at 363a-366a. She related that the Authority maintains records "according to the tenants who are assisted," rather than by property. R.R. at 524a. Accordingly, Militello pronounced that, in order to fulfill the RTKL request, she and her staff reviewed each tenant file and created the spreadsheet sent to Polaha on October 21, 2014. *See* R.R. at 526a. She claimed that she would have to again review more than 1,500 tenant files in order to create the list Polaha seeks, since the Authority does not

---

[20] Militello stated that HCVP families must earn below 50% of the median household income, which "are described as very low and extremely low income households." R.R. at 529a.

11

maintain the tenant files by township.[21]  *See* R.R. at 524a, 555a.  More importantly, however, the Authority maintained that the federal Privacy Act of 1974 (Privacy Act)[22] and HUD regulations prohibit it from releasing personal HCVP family information, for anonymity and safety purposes.[23]  *See* R.R. at 531a-532a, 538a.

Militello further testified that, as part of the HCVP application process, adult tenants complete and sign HUD Form 9886 (Authorization for the Release of Information/Privacy Act), authorizing HUD and the Authority to request salary/wage verification from employers, and unemployment compensation information from state agencies, and for HUD to obtain information from the Internal Revenue Service (IRS) and the U.S. Social Security Administration.  *See* R.R. at 410a-411a, 536a-537a, 541a.  HUD Form 9886 states:

> **Uses of Information to be Obtained:** HUD is required to protect the income information it obtains in accordance with the Privacy Act of 1974, 5 U.S.C. [§] 552a.  HUD may disclose information (other than tax return information) for certain routine uses, such as to other government agencies for law enforcement purposes, to Federal agencies for employment suitability purposes and to [a Housing Authority (HA)] for the purpose of determining housing assistance.  The HA is also required to protect the income information it obtains in accordance with any applicable State privacy law.  HUD and HA employees may be subject to penalties for unauthorized disclosures or improper uses of the income information that is obtained based on the

---

[21] Militello admitted that the file information is maintained in a database, which contains a rental unit file, listing the address, size, owner name and resident; however, she does not have a tech person and is not familiar with the new system.  *See* R.R. at 557a-558a.

[22] Act of December 31, 1974, P.L. 93-579 § 2, Title V, § 522a note, 88 Stat. 1897.

[23] Militello reported that the Authority has experienced circumstances in which HCVP families have been threatened, and domestic abuse was a concern.  *See* R.R. at 533a-536a.  She further stated that the Authority is prevented from revealing such information even for beneficial purposes.  For example, when there are school district scholarship opportunities for the recipients' children, the Authority is precluded from notifying the school regarding tenants' eligible children, but must hope that parents take steps necessary to take advantage of those opportunities.  *See* R.R. at 535a.

consent form. **Private owners may not request or receive information authorized by this form.**

R.R. at 410a. The HUD Form 9886 further reflects:

> Privacy Act Notice. Authority: [HUD] is authorized to collect this information by the U.S. Housing Act of 1937 (42 U.S.C. [§] 1437 et. seq.), Title VI of the Civil Rights Act of 1964 (42 U.S.C. [§] 2000d), and by the Fair Housing Act (42 U.S.C. [§§] 3601-19). The Housing and Community Development Act of 1987 (42 U.S.C. [§] 3543) requires applicants and participants to submit the [s]ocial [s]ecurity [n]umber of each household member who is six years old or older. Purpose: Your income and other information are being collected by HUD to determine your eligibility, the appropriate bedroom size, and the amount your family will pay toward rent and utilities. Other Uses: HUD uses your family income and other information to assist in managing and monitoring HUD-assisted housing programs, to protect the Government's financial interest, and to verify the accuracy of the information you provide. This information may be released to appropriate [f]ederal, [s]tate, and local agencies, when relevant, and to civil, criminal, or regulatory investigators and prosecutors. However, the information will not be otherwise disclosed or released outside of HUD, except as permitted or required by law. Penalty: You must provide all of the information requested by the HA, including all [s]ocial [s]ecurity [n]umbers you, and all other household members age six years and older, have and use.

R.R. at 411a. Finally, HUD Form 9886 specifies:

> **Penalties for Misusing this Consent:**
>
> HUD, the HA and any owner (or employee [thereof]) may be subject to penalties for unauthorized disclosure or improper uses of information collected based on the consent form.
>
> Use of the information collected based on [HUD Form] 9886 is restricted to the purposes cited on [HUD Form] 9886. Any person who knowingly or willfully requests, obtains or discloses any information under false pretenses

concerning an applicant or participant may be subject to a misdemeanor and fined not more than $5,000.

Any application or participant affected by negligent disclosure of information may bring civil action for damages, and seek other relief, as may be appropriate, against the officer or employee of HUD, the HA or the owner responsible for the unauthorized disclosure or improper use.

R.R. at 411a. Militello reported that the Authority's HCVP Operating Procedure mandates the Authority to obtain the HUD Form 9886 release from the tenants upon application and for annual reviews, and that confidentiality must be maintained. *See* R.R. at 392a, 540a.

Militello described, to that end, "HUD issues . . . notices on how to properly maintain sensitive and personal family information," R.R. at 53, and the Authority requires employees to read and acknowledge Section 5.7 of its Human Resources Policy Manual, that provides, in relevant part:

The [Authority] has certain information about . . . residents that is unique to the [Authority]. The Authority has a legal and ethical responsibility to safeguard the privacy of its residents and to protect the confidentiality of their personal information. . . . Employees are required to keep resident . . . information confidential.

R.R. at 373a; *see also* R.R. at 538a-539a.

According to Militello, HUD Form 52646 (Voucher) issued to eligible tenants contains the following Privacy Act statement: "HUD may disclose the information to [f]ederal, [s]tate and local agencies when relevant to civil, criminal, or regulatory investigations and prosecutions. It will not otherwise be disclosed or released outside of HUD, except as permitted or required by law. . . ." R.R. at 412a; *see also* R.R. at 531a. The HCVP Voucher does not contain the rental unit address.[24] *See* R.R. at 412a-414a.

---

[24] The HCVP Voucher is signed by the tenant family representative. *See* R.R. at 412a.

Militello explained that HUD Form 52641 (Housing Assistance Payments Contract for property owners),[25] HUD Form 52580 (HCVP Inspection Checklist)[26] and HUD Form 50058 (HUD Family Report)[27] contain the HCVP rental property addresses, but similarly contain the Privacy Act warnings that only authorize HUD, and not the Authority, to release the information contained therein.[28] *See* R.R. at 398a-409a, 415a-437a, 541a-545a, 551a-552a, 555a. She related that HUD Form 50058 Instruction Booklet also contains the Privacy Act warning and only permits HUD to release information as necessary. *See* R.R. at 438a-511a, 544a-545a.

Militello articulated that HUD inspection reports have only been released for criminal investigations in accordance with family authorization and a subpoena, neither of which Polaha produced in this case. *See* R.R. at 549a-550a. Militello reported that, even if the Authority redacted the information regarding specific HCVP recipients from the Authority's documents, publicly releasing the rental unit addresses identifies where low income persons reside. *See* R.R. at 553a.

At the outset, the parties disagree about whether Polaha's request represents an intrusion. Polaha contends that the tenants waived their constitutional protection when they "readily acknowledged on the HUD forms that their information, including home addresses, could be subject to disclosure in a number of circumstances, including investigations such as [Polaha's]." Polaha Br. at 5-6. The Authority responds that the tenants did not waive their constitutional rights based upon the HUD forms; that the Supreme Court would not have remanded this case if

---

[25] The agreement is between the Authority and the property owners. *See* R.R. at 400a.

[26] Militello testified that the inspection checklist is used by the Authority to determine if the rental unit is compliant with HUD quality standards. *See* R.R. at 542a.

[27] According to Militello, the family reports are completed by case managers under her supervision, and neither the family report nor the accompanying instructions (HUD Form 50058 Instruction Booklet) are seen or executed by the HCVP recipients. *See* R.R. at 543a.

[28] When asked by counsel: "Is it your position that even though you are complying with HUD regulations that the permission to release these records does not flow down to the [Authority]?" Militello responded "Yes." R.R. at 552a.

the issue was waived; and, that the HCVP tenants could not have waived a right that was not made clear until *PSEA III* was issued.

The law is well-settled that "[c]onstitutional rights can be waived." *Commonwealth v. Ball*, 146 A.3d 755, 766 (Pa. 2016). However, "[w]e are unaware of any constitutional right that can be waived by operation of a rule of procedure that does not explicitly provide for the waiver." *Id.* at 767. Rather, "any [such] waiver must be knowing, intelligent and voluntary." *Commonwealth v. Goodwin*, 333 A.2d 892, 894 (Pa. 1975). "[I]n order for the waiver to be voluntary, it must be 'an intentional relinquishment or abandonment of a known right.'" *Commonwealth v. Carey*, 340 A.2d 509, 510 (Pa. Super. 1975) (quoting *Johnson v. Zerbst*, 304 U.S. 458 (1938)). A waiver is knowing and intelligent if the right holder is aware of both the nature of the right and the risk of forfeiting it. *Commonwealth v. Vega*, 719 A.2d 227 (Pa. 1998).

Here, although the HCVP tenants may have been aware of and understood the nature of their right to privacy in the specific information contained in the HUD Form 9886 Release and the HUD Form 52646 Voucher[29] they signed, they did not intentionally relinquish or abandon their rights to privacy in the addresses of their subsidized rental units, since those forms did not contain that information. Moreover, the clear right to privacy in that information was not enunciated until *PSEA III* was decided. Finally, the language on HUD's forms put the HCVP tenants on notice that HUD and the Authority must keep their personal information confidential, and **only HUD may disclose the family's information under very limited circumstances**. Polaha made the RTKL request because "[t]he Township wanted to make sure that the list [of HCVP tenant-occupied properties] was complete[,]" purportedly so it could confirm that the properties are properly inspected

---

[29] Both the HUD Release and the HUD Voucher forms require the HCVP recipient family's acknowledgement, but do not contain the rental unit addresses.

and certificated. R.R. at 560a. There is no record evidence that the purpose of the request was related to any active investigation or legal proceeding involving the Township's HCVP families. Thus, although HCVP tenant families acknowledged that HUD *may* have to disclose information to local agencies relative to civil or regulatory investigations and prosecutions, the Township's HCVP families did not expressly waive their constitutional rights to privacy in their home addresses under the circumstances presented here.

Polaha also argues there is no privacy intrusion since, as in *Van Osdol*, the tenants' names were not requested with their addresses. The Authority contends that, under *PSEA III*, the constitutional protection applies to home addresses regardless of whether names are released with them.

We acknowledge that the *Van Osdol* Court held:

> Van Osdol sought to obtain only the addresses of Section 8 properties and the names of the individuals owning those properties. The requested information d[id] not itself identify individuals who appl[ied] for or receive[d] social services or the type of social services received by those individuals. Nor d[id] such information directly identify the name, home address or date of birth of children who are 17 years of age or younger residing in Section 8 properties, or the home address of a law enforcement officer or judge who may own Section 8 properties. When the exemptions under Section 708(b)(6)(i)(C), (28)(i) and (ii)(A) and (30) of the [RTKL] are narrowly construed, as we must do, the requested information does not fall within those exemptions.

*Id.* at 215-16.

Notwithstanding, the *PSEA III* Court specifically settled that the right to privacy in one's home address is not abrogated for RTKL requests unless, **after** applying the balancing test, that interest is outweighed by the public interest favoring disclosure. *PSEA III*. The Pennsylvania Supreme Court did not limit its holding to

17

circumstances wherein disclosure of the home address would lead to a resident's identity.[30]  On February 8, 2017, this Court confirmed that *PSEA III*'s holding requires that *whenever* home addresses do not expressly fall under an RTKL Section 708(b) exemption, the balancing test must be applied.  *Dep't of Human Servs.*  Accordingly, we hold that the constitutional privacy protection applies when home addresses are requested, regardless of whether names or the resident's identity are attached.

Having determined that Polaha's request represents an intrusion on HCVP tenants' constitutional rights to privacy in their home addresses that they did not waive, we must decide whether the Township has a significant government interest in the information, and whether there is an alternate reasonable method of lesser intrusiveness to accomplish its purpose.  *Denoncourt*.

"Whether there is a significant [Township] interest [in the tenants' addresses] will depend, in part, on whether the [Township's] intrusion will effect its purpose[.]"  *Id.* at 949.  Here, Polaha's RTKL request was made because "[t]he Township wanted to make sure that the list [of HCVP tenant-occupied properties] was complete[.]"  R.R. at 560a.  The Authority searched its records and created a list of the 74 Township properties where HCVP recipients reside, and included the owners' names and addresses, the rental unit numbers, the property inspection dates

---

[30] *PSEA III* does not reference *Van Osdol*.  However, in *Department of Human Services*, this Court stated that *Van Osdol* controlled its determination of whether records containing DCWs' addresses were so closely related to their identities that they were exempt from disclosure under the RTKL.  Based on the *Van Osdol* holding, this Court affirmed the OOR's determination that since the list of DCWs' home addresses did not identify a particular person's caregiver, the list was not expressly exempt and, thus, was subject to public access under the RTKL.  Nevertheless, because *PSEA III* was issued after oral argument, this Court concluded that it "is constrained to vacate the portion of the [OOR's] Final Determination that ordered DHS to provide [the requestor] the home addresses of all DCWs and remand the matter to the OOR to perform the balancing test required under *PSEA III*."  *Dep't of Human Servs.*, 154 A.3d at 437.

18

and whether certificates of occupancy have been issued for them. *See* R.R. at 60a-63a, 66a, 527a. Moreover, during oral argument, Polaha's counsel acknowledged that it could obtain the requested information through a two-step process, but simply preferred to obtain the information directly from the Township, thereby reducing the process to one-step.

Applying the *Denoncourt* balancing test to the instant facts, this Court holds that the Authority supplied Polaha, in the most reasonable and least intrusive manner, with the information the Township needs to confirm that its list of HCVP properties is complete. Moreover, Polaha's request for specific tenant addresses will not further the Township's interest, or reveal anything of value about the Authority's inner workings. Under the circumstances, the Township does not have a significant government interest that outweighs the tenants' rights to privacy in their home addresses and, thus, the intrusion is not constitutionally justified. *PSEA III*.

Based on the foregoing, we vacate this Court's order in *Chester I* and reverse the trial court's order.

_____
ANNE E. COVEY, Judge

19

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Housing Authority,    :
       Appellant  :
           :
    v.       :
           :  No. 2391 C.D. 2015
Stephen Polaha      :

## O R D E R

AND NOW, this 21st day of November, 2017, on remand, this Court's order in *Chester Housing Authority v. Polaha* (Pa. Cmwlth. No. 2391 C.D. 2015, filed August 11, 2016) is vacated, and the Delaware County Common Pleas Court's October 22, 2015 order is reversed.

          _____
          ANNE E. COVEY, Judge