IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| William Towne, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Allegheny County and Allegheny | : | No. 98 C.D. 2025 |
| County Board of Elections | : | Submitted: November 6, 2025 |

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                    HONORABLE STACY WALLACE, Judge
                    HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON                                    FILED: April 23, 2026


        William Towne (Towne) appeals from a January 17, 2025 Order (Trial Court Order) of the Court of Common Pleas of Allegheny County (Trial Court) that denied his post-trial motion for judgment notwithstanding the verdict, thus finalizing the December 23, 2024 non-jury verdict of the Trial Court.  Towne argues that the Trial Court abused its discretion in denying his post-trial motion and that the Trial Court's verdict was based on an error of law.  After thorough review, we affirm the Trial Court Order.


## I. Background
### A. Towne's First RTKL Request

        In October 2021, Towne requested the 2020 General Election mail-in ballot declaration envelopes from Allegheny County and the Allegheny County Board of Elections (collectively, County) pursuant to the Right-to-Know Law

(RTKL).[1]  Reproduced Record (R.R.) at 567a-68a.[2]  The County invoked a 30-day extension for its response but failed to respond before the expiration of the extension, thus resulting in the deemed denial of Towne's request.[3]  *Id.* at 568a-69a; *see* 65 P.S. § 67.902(b)(2).  On November 22, 2021, Towne appealed the County's denial of his request to the Office of Open Records (OOR), and the County subsequently acknowledged via position statement on December 6, 2021, that Towne was entitled to access the envelopes, subject to redaction of voter signatures.[4]  R.R. at 1018a-19a.  However, due to the nature of the ongoing COVID-19 pandemic and the fact that mail-in ballots had been used only once previously, the unusually large volume of mail-in ballots had not been electronically documented.  *See id.*; *see also* County's Br. at 23-24.  As a result, the County posits that Towne must review the declaration envelopes in person without reference to voter signatures.  R.R. at 1018a-19a.

Also on December 6, 2021, Towne submitted a position statement to the OOR requesting a finding of bad faith against the County, alleging that the County failed to search and review the requested records during the "request phase"

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] Citations to the reproduced record herein follow the page numbering format prescribed by Rule 2173 of the Pennsylvania Rules of Appellate Procedure rather than the incorrect format in the reproduced record itself.  *See* Pa.R.A.P. 2173 (directing that "pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures and . . . followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc.").

[3] In the County's December 6, 2021 response to Towne's appeal with the OOR, the County justified its failure to meet the specified timeframe by pointing to preparation and recount requirements for the General Election.  R.R. at 1017a-18a.

[4] The OOR and the parties typically use "voter signatures" to refer to the voter-specific codes printed on each ballot and associated declaration envelope.  The OOR's written decision refers to signatures, electronic signatures, and barcodes, and it does not clearly indicate whether those terms refer to different things.

2

and avoided raising constitutional privacy issues[5] earlier to avoid a substantive determination from the OOR.[6] R.R. at 45a-46a; Towne's Br. at 38-39. Upon review, the OOR denied Towne's appeal in part and concluded that the bad faith issue was moot because the County acknowledged within 60 days of the request that Towne was entitled to access the requested documents. R.R. at 46a.

Towne thereafter filed a Petition for Reconsideration with the OOR, arguing that (1) the County failed to meet its burden to show that any exemptions apply to the requested records, (2) the requested records are presumed public under the RTKL, (3) the voter signatures are "public general register information" under the Pennsylvania Election Code (Election Code),[7] 25 P.S. § 2648, and (4) the County acted in bad faith. R.R. at 45a-46a. In opposition to Towne's Petition for Reconsideration, the County maintained that disclosing the declaration envelopes in full would contravene Section 3148.9(a) of the Election Code, which prohibits making proof of identification public. R.R. at 272a; *see* 25 P.S. § 3146.9, *added by* the Act of March 6, 1951, P.L. 3. Specifically, "the absentee and mail[-]in declaration envelope[] used at the November 2020 election contain a bar code on the front of the envelope which, while not the voter [identification] number, can, if publicly examined and recorded, lead to the identification of a ballot, linking said ballot to a particular voter." R.R. at 272a.

---

[5] Article VII, section 4 of the Pennsylvania Constitution provides that "[a]ll elections by the citizens shall be by ballot or by such other method as may be prescribed by law: Provided, That secrecy in voting be preserved." Pa. Const. art. VII, § 4.

[6] Additionally, Towne submitted the attestation of Ronald Bandes, a registered elector of Allegheny County, who claimed that the County denied his request to view and photograph declaration envelopes. R.R. at 46a & 295a-97a.

[7] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

3

On February 15, 2022, the OOR issued its Final Determination On Reconsideration, concluding that declaration envelopes for mail-in ballots are public records and that the County was required to "grant access to requested records, subject to the provisions of the Election Code, within thirty days." R.R. 50a-51a. The County petitioned the OOR for a second reconsideration, arguing that the County previously provided Towne's associate with a flash drive containing images of every ballot in Allegheny County which could be cross referenced with the declaration envelopes to identify voters' ballots. *Id*. at 55a-56a. The County further argued that

> [a]s it is possible to match the codes from the mail-in/absentee ballot envelope and the ballot itself, it is possible to identify a voted ballot with a particular voter. As a result, this request cannot be honored as it is in violation of the Pennsylvania Constitution [a]rticle VII Paragraph 4, that mandates secrecy in voting. More specifically, the County's ballot printing/mailing vendor marked the outer mailing envelope, the declaration envelope and the ballot with a 2d bar code with a sequential number following . . . . One could very easily "marry" a voted ballot with a bar code to an individual voter, thus bypassing the Constitutional mandate.

*Id*. at 277a; Pa. Const. art. VII, § 4. However, the County's Petition for Reconsideration was denied. County's Br. at 3.

On March 17, 2022, the County contacted Towne to arrange for his viewing of the declaration envelopes pursuant to the OOR's Final Determination on Reconsideration. R.R. at 59a. The County's letter explained that there were "in excess of 300,000 envelopes, stored in no particular order." *Id*. Towne visited the County's elections warehouse to view the declaration envelopes for several hours in April 2022. *Id*. at 632a.

No party appealed the OOR's Final Determination on Reconsideration.

4

**B. Towne's Second RTKL Request**

On March 15, 2022, Towne submitted a second RTKL request to the County, requesting the following information regarding "all electors who applied for absentee ballots for the November 2020 election, whether or not the application was approved":

(1) The elector's name and voter registration address.

(2) The date on which the elector's application is received by the county board.

(3) The date on which the elector's application is approved or rejected by the county board.

(4) The date on which the county board mails or delivers the absentee ballot to the elector.

(5) The date on which the elector's completed absentee ballot is received by the county board.

R.R. at 66a (citing 25 P.S. § 3146.9(b)-(c)). The County responded on March 18, 2022, informing Towne that all of the requested records had been provided the previous day via data drop. *Id*. at 65a. Thus, the County regarded Towne's second RTKL request as granted. *Id*.

On March 20, 2022, Towne contacted several members of the County to express displeasure with the data provided in response to his second RTKL request, asserting that voter address information was missing and that some of the information appeared to be untruthful. R.R. at 69a. The County responded that data entry errors may exist and that he was entitled to view the countywide voter history disc only by visiting the Elections Division in person after providing identification. *Id*. at 68a. Upon visiting on April 22, 2022, Towne was given a copy of the voter

history file and was allowed to examine 16 boxes containing rejected mail-in ballots from the 2020 General Election. *Id*. at 614a & 806a.

Towne did not challenge the adequacy of the County's response.

### C. Proceedings Before the Trial Court

On June 21, 2022, Towne filed his Complaint in Mandamus separated into two Counts, each corresponding to the respective RTKL request. R.R. at 8a. In Count I, related to his first RTKL request, Towne argued that the County must permit him to make copies of the declaration envelopes; and in Count II, related to his second RTKL request, Towne argued that the County must "promptly compile and provide" the requested information. *Id*. at 32a-38a. Towne further requested a finding of bad faith by the County and an award of fees and penalties as a result. *See id*. Towne also filed a Motion for Preliminary Injunction, which the Trial Court denied after holding a hearing on the matter. *Id*. at 5a & 94a.

After a two-day trial,[8] the Trial Court ordered the County to provide Towne with redacted copies of the declaration envelopes pursuant to Count I, "provided that voter privacy is safeguarded and the production complies with the Election Code." R.R. at 567a. The Trial Court further held that the County complied with the Election Code and was not obligated to create electronic records pursuant to Count II. *Id*. at 572a-73a. Concluding that the County did not act in bad faith, the Trial Court refused to award Towne any fees. *Id*. at 572a-75a.

Following the issuance of the Trial Court's Opinion and Order on December 23, 2024, Towne filed a Motion for Post-Trial Relief, requesting judgment notwithstanding the verdict. R.R. at 496a-527a. The Trial Court issued

---

[8] Towne apparently proceeded *pro se* in all matters prior to this appeal. *See* County's Br. at 5-6.

6

the Trial Court Order on January 17, 2025, denying Towne's request and thus finalizing the original December 23, 2024 Order. *Id*. at 532a. The same day, Towne provided notice of his appeal of the Trial Court Order to this Court.[9] *Id*. at 529a-30a.

## II. Issues

Before this Court,[10] Towne argues that the Trial Court Order was an abuse of discretion. Towne's Br. at 9-10. Specifically, Towne maintains that the Trial Court erred in denying mandamus relief based on a misinterpretation of the Election Code. *Id*. at 21-22. Therefore, Towne argues that mandamus relief in full is proper because the County failed to comply with the RTKL. *Id*. at 9. Towne also avers that the Trial Court improperly allowed the County to re-litigate issues decided by the OOR relating to the first RTKL request, which neither party appealed, or to challenge collaterally the County's response to the second RTKL request, which Towne did not challenge administratively. *See id*. at 11-12. Towne requests that this Court grant his request for judgment notwithstanding the verdict to require the

---

[9] Upon notice of appeal, the Trial Court issued an Opinion pursuant to Rule 1925(a)(1) of the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 1925(a)(1); R.R. at 556a-66a.

[10] In *Menkowitz v. Peerless Publications, Inc.*, 211 A.3d 797, 804 (Pa. 2019), our Supreme Court observed:

> An appellate court will reverse the trial court's decision to grant or deny [judgment notwithstanding the verdict] only when it finds an abuse of discretion or an error of law. An abuse of discretion does not result from a mere error of judgment. An abuse of discretion exists where the law is overridden or misapplied, or the judgment exercise is manifestly unreasonable for the result of partiality, prejudice, bias, or ill will, as shown by the evidence of the record.

*Id*. (internal citations omitted).

7

County to electronically compile and provide unredacted copies of its 2020 declaration envelopes and ballot application data, as well as award $505,000,000 in civil penalties due to the County's alleged bad faith violation of the RTKL. *Id*. at 9-10.

The County maintains that the record reflects substantial evidence supporting the Trial Court's findings and that the Trial Court did not abuse its discretion or commit an error of law when applying the facts surrounding this case. County's Br. at 8. The County argues that Towne's accusations arise from animosity toward the County and that none of his arguments rises to the level of warranting the extraordinary remedy of a common law writ of mandamus. *Id*. Thus, the County insists the Trial Court's partial grant of mandamus relief through the Trial Court Order was satisfactory under the RTKL. *See id*. at 16-17.

## III. Discussion

### A. Mandamus – Scope of RTKL Disclosure Requirements

Regarding the requirements of mandamus relief, this Court has explained:

> Mandamus is "an extraordinary writ and a remedy used to compel performance of a ministerial act or a mandatory duty." *Burns v. Bd. of Dirs. of Uniontown Area Sch. Dist.*, 748 A.2d 1263, 1268 (Pa. Cmwlth. 2000). For a party to prevail in a mandamus action, it must demonstrate (1) a clear legal right in the petitioner for performance of the ministerial act or mandatory duty; (2) a corresponding duty in the respondent to perform the ministerial act or mandatory duty; and (3) no other appropriate remedy available. *Id.*

8

*Bethke v. City of Phila.*, 343 A.3d 370, 375 (Pa. Cmwlth. 2025). Further, in the specific context of an RTKL request, this Court has explained the requirements for mandamus relief as follows:

> A writ of mandamus compels the government's performance of a ministerial and mandatory duty where there is a clear legal right in the plaintiff and a lack of any other adequate and appropriate remedy at law. *Del. River Port Auth*. v. Thornburgh, . . . 493 A.2d 1351, 1355 (Pa. 1985).
>
> The [RTKL] imposes a mandatory and ministerial duty upon a government agency to provide public records to a requester. ***Where there has been a final determination of the [OOR] that the requested records are disclosable, then the requester has established a clear right to have the agency produce those public records.*** The requester lacks another adequate and appropriate remedy because the [RTKL] does not provide one. . . .

*Capinski*, 164 A.3d at 606 (footnote omitted) (emphasis added) (citing and discussing, as persuasive, *Ledcke v. Cnty. of Lackawanna*, 28 Pa. D. & C. 5th 34 (Pa. C.P. 2013)). Thus, under *Capinski*, Towne must establish that the OOR's final determinations require disclosure of the requested records in order to demonstrate a clear right to compel production of the unredacted records through a mandamus action. Here, for the reasons explained below, we conclude that Towne has failed to establish such a mandatory ministerial duty and has not established a clear right to obtain the requested records. Therefore, Towne is not entitled to mandamus relief.

The RTKL was established "to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials and make public officials accountable for their actions." *Off. of Governor v. Raffle*, 65 A.3d 1105, 1107 n.1 (Pa. Cmwlth. 2013). As such, local agencies are required to provide requesters with public records "in accordance with" the RTKL. 65 P.S.

9

§ 67.302(a). However, Section 305(a) provides, in pertinent part, that "[t]he presumption [that an agency record is a public record subject to disclosure] shall not apply if . . . ***the record is exempt from disclosure under any other Federal or State law*** or regulation or judicial order or decree." 65 P.S. § 67.305(a) (emphasis added). This language limits the latitude of public disclosure through exemptions established under state laws. *See id.* Accordingly, the OOR's determinations at issue here required disclosure of the requested documents, subject to the parameters of other state law, *i.e.*, the Election Code.

However, "[t]he Constitution is the fundamental law of our Commonwealth . . . .") *Pa. Prison Soc'y v. Com.*, 776 A.2d 971, 977 (Pa. 2001). As such, the state constitutional right to voter secrecy also imposes parameters for RTKL requests. For example, in *Previte v. Erie County Board of Elections,* 320 A.3d 908 (Pa. Cmwlth. 2024), this Court determined

> that completed absentee and mail-in ballots are to be treated as public records once those ballots have been removed from the ballot box or voting machine, and that those ballots can be obtained through an RTKL request as long as they follow the Election Code's rules of disclosure ***and do not include any information that identifies (or is reasonably likely to facilitate the identification of) the individuals who cast those ballots***.

*Id.* at 917 (emphasis added).

Here, the record reflects that Towne, through an associate, possesses a flash drive with voter history information on it that, when compared with the requested unredacted declaration envelopes, would provide voter identification information. *See* R.R. at 276a. The Joint Stipulation of Facts concedes that the declaration envelopes show the correlation between the identity of the voter and the

10

two-dimensional (2D) barcode[11] and number printed on the envelope and ballot. *Id.* at 285a. Thus, such an outcome is not a mere risk. The County offered testimony that access to both the flash drive and the declaration envelopes would allow someone "to do a comparison" and "back trace [to] see how people voted." *Id.* at 799a-800a. Further, Towne testified expressly and in detail about his "intent to interpret columns of data that were provided," and he shared a document with empty voter name and address columns that he was attempting to fill. *See id.* at 606a-07a & 621a-22a. He further expressly acknowledged his intent to deanonymize the votes from "one or two . . . skeptical volunteers who give consent for their choices to be revealed." Towne's Br. at 17-18. While an individual is "free to give up certain constitutional protections, [one] cannot cede away the constitutional rights of another." *Commonwealth v. Edwards*, 874 A.2d 1192, 1197 (Pa. Super. 2005).[12] Moreover, Towne does not provide any evidence in the record of specific "skeptical volunteers" who consent to renouncing their constitutional right to voter secrecy, much less any evidence that such consent was sufficiently demonstrated to the County.

Additionally, we observe that a writ of mandamus cannot be issued where it will require the government agency to violate its constitutional duty to protect a clear constitutional or statutory right or duty. As discussed above, a writ of mandamus compels performance of a mandatory duty where there is a clear legal right to relief. *Capinski v. Upper Pottsgrove Twp.*, 164 A.3d 601, 606 (Pa. Cmwlth.

---

[11] "Unlike linear barcodes, two-dimensional (2D) barcodes are created on an x-y axis, meaning they can be read from any direction." https://www.gs1us.org/upcs-barcodes-prefixes/1d-vs-2d-barcodes (last visited April 22, 2026).

[12] While not binding on this Court, decisions of the Superior Court may be cited as persuasive where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.,* 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

11

2017) (citing *Del. River Port Auth.*, 493 A.2d at 1355). Where such relief would violate a constitutional or statutory provision, mandamus relief is not available, because a mandamus proceeding cannot be used to compel an act that is "illegal, invalid, or in violation of a statute." *Puricelli v. PennDOT*, 288 A.3d 581, 585-86 (Pa. Cmwlth. 2023). Here, the mandamus relief Towne requests would require violation of constitutional voter privacy rights. Therefore, under *Puricelli*, he is not entitled to that relief.

Providing Towne with the unredacted envelopes would facilitate identification of voters in direct contravention of article VII, section 4 of the Pennsylvania Constitution. Manifestly, there can be no mandatory ministerial duty to do so and, likewise, no clear right to relief. Thus, Towne is not entitled to access beyond what has already been permitted by the OOR and honored by the County.

### B. Preservation of Issues

We observe that "[w]hen [a constitutional] privacy right attaches to particular personal information, it 'exists independent of the exemptions found in the RTKL.'" *W. Chester Univ. of Pa. v. Rodriguez*, 216 A.3d 503, 510 (Pa. Cmwlth. 2019) (quoting *Dep't of Hum. Servs. v. Pennsylvanians for Union Reform, Inc.*, 154 A.3d 431, 437 (Pa. Cmwlth. 2017)). In response to Towne's claims here, the County argues that disclosure of unredacted versions of the information at issue would violate constitutional voter privacy protections. Towne suggests, however, that the County failed to preserve any constitutional argument. We disagree.

It is inherent in the structure of the RTKL that because an agency bears the burden of proving that a disclosure exemption applies, the agency must submit evidence and argument initially before the OOR when given the opportunity to do

so. *Pa. State Police v. ACLU of Pa.*, 300 A.3d 386, 395 (Pa. 2023) (citing *McKelvey v. Pa. Dep't of Health*, 255 A.3d 337, 404 (Pa. 2021)). In the first RTKL request at issue here, the OOR requested position statements from Towne and the County before issuing its Final Determination. *See* R.R. at 45a. Towne maintains that the County failed to preserve its constitutional voter privacy rights argument because it did not properly raise that issue before the OOR. We reject this argument.

Contrary to Towne's position, whether the County's position statement in the RTKL proceeding before the OOR raised the constitutional concerns later argued in opposing Towne's mandamus action has no bearing here. Neither party appealed the OOR's final determination. Towne's claim here is a new and separate civil action; thus, there is no preservation issue. Further, Towne does not contend that the OOR decided any constitutional issue adversely to the County such that the County could not raise that issue as a defense in the instant mandamus action. The County is not precluded by waiver or estoppel principles from asserting any and all relevant defenses against the arguments asserted by Towne.[13]

---

[13] Moreover, we note that accepting Towne's argument here would result in a waiver of the constitutional rights of third-party voters, who had no ability to prevent the waiver. We cannot countenance such a potential waiver of the rights of third parties. In *Governor's Office of Administration v. Purcell*, 35 A.3d 811 (Pa. Cmwlth. 2011), now-Justice Brobson prophetically expressed concerns about protection of the constitutional rights of third parties, observing in a concurring opinion that "the General Assembly lacks the authority to compel an agency to disclose a third[ ]party's information in the agency's possession where doing so would violate rights afforded the third[ ]party under the Pennsylvania Constitution . . . ." *Id.* at 821-22 (Brobson, J., concurring). That very situation is presented here.

Later, Justice Brobson authored this Court's decision in *West Chester University of Pennsylvania v. Rodriguez*, 216 A.3d 503 (Pa. Cmwlth. 2019), in which we echoed the concern expressed in the *Purcell* concurrence, observing that "the constitutional right to informational privacy inheres not in agencies, but in individuals who are not usually parties to the RTKL

In summary, we conclude that the County was not required to raise constitutional arguments before the OOR in order to preserve them in the separate mandamus action. Moreover, even if we were to accept Towne's argument that preservation before the OOR was otherwise required, we conclude, consistent with the protection of third parties' constitutional rights supported by *Purcell* and *Rodriguez*, that a litigant's purported failure to assert the constitutional voter privacy rights of third parties does not amount to a waiver of those voters' rights. Accordingly, we reject Towne's preservation arguments.

### C. County's Duty to "Provide" and "Compile"[14]

Sections 3146.9 and 3150.17 of the Election Code require counties to maintain, compile, and provide particular specified data. 25 P.S. §§ 3146.9 & 3150.17. In pertinent part, "the county board shall ***maintain*** a record" and "shall

---

proceeding. The RTKL does not require that such third parties receive notice that a determination affecting their constitutional rights has been appealed." *Id.* at 510.

The concurrence in *Purcell* and the subsequent *Rodriguez* opinion suggested that agencies must be mindful of third-party rights when responding to RTKL requests. Thus, the privacy considerations raised in *Purcell* and *Rodriguez*, together with the voter privacy protection guaranteed by the Pennsylvania Constitution, suggest that an agency's failure to assert third parties' constitutional rights before the OOR cannot result in waiver of those rights.

[14] We address the County's duty to compile and the accusation of the County's bad faith, for completeness, because the Trial Court addressed these issues. We note, however, that these issues, as set forth in Count II of the mandamus complaint, are beyond the scope of a mandamus claim that seeks merely to compel the County to comply with the OOR's final determination regarding the County's response to the RTKL request. As the Trial Court stated, "compiling" is not a defined term in the Election Code, and its meaning is not a proper subject of mandamus relief, which, as discussed above, is used to enforce a clear right to performance of a purely ministerial duty and is not the mechanism for determining a right or a duty. R.R. at 565a & 572a-73a.

14

*compile* the records listed under subsection (b) *and* make the records publicly available upon request[.]" *Id.* §§ 3146.9(c) & 3150.17(b)-(c) (emphasis added).

Towne argues that the language of Sections 3146.9 and 3150.17 mandate that the County electronically maintain the documents subject to RTKL requests. *See* Towne's Br. at 24-26. However, Section 705 of the RTKL expressly provides that "[w]hen responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. § 67.705. As none of the approved usages suggests imperative electronic organization and the County does not currently employ such organization, the County did not err by maintaining physical copies in its Elections Division Warehouse and making the records available to Towne in that format.

Therefore, we agree with the Trial Court that the County did not act in bad faith in its methods of maintaining the mail-in ballots pursuant to the provisions of the Election Code.

**D. Penalties Against the County**

Section 1305 of the RTKL permits civil penalties "of not more than $1,500" if an individual is "denied access to a public record in bad faith." 65 P.S. § 67.1305(a). However, because the County did not act in bad faith and Towne was provided access to the requested records in accordance with the Election Code and the Pennsylvania Constitution, no penalty is appropriate.

15

## IV. Conclusion

Based on the foregoing discussion, we affirm the Trial Court Order that denied Towne's request for judgment notwithstanding the verdict below.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Towne, : 
                Appellant : 
                : 
        v. : 
                : 
Allegheny County and Allegheny :    No. 98 C.D. 2025
County Board of Elections : 

# **O R D E R**

AND NOW, this 23rd day of April, 2026, the January 17, 2025 Order of the Court of Common Pleas of Allegheny County (Trial Court) is AFFIRMED.[1]

 

_____
CHRISTINE FIZZANO CANNON, Judge

---

[1] Appellant couched his request for relief in his appellate brief as a request that this Court enter judgment notwithstanding the verdict. The Trial Court denied that relief in its denial of Appellant's motion for post-trial relief. Thus, our affirmance of the Trial Court's order has the effect of denying the requested relief.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Towne, : 
               Appellant : 
                   : 
        v. : No. 98 C.D. 2025
                   : Submitted: November 6, 2025
Allegheny County and Allegheny : 
County Board of Elections : 

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

CONCURRING OPINION
BY JUDGE WALLACE                       FILED: April 23, 2026

I agree with the Majority that William Towne (Towne) is not entitled to receive unredacted copies of declaration envelopes to the extent providing the copies would imperil the constitutional right to secrecy in voting. In addition, I agree the Court of Common Pleas of Allegheny County (Trial Court) did not err or abuse its discretion by denying Towne's request for fees, costs, and penalties against Allegheny County (County). I part ways with the Majority, however, because I believe it misinterprets Towne's argument regarding the County's duty to maintain and compile information relating to mail-in and absentee ballots.[1]

---

[1] The Majority suggests it is unnecessary for the Court to address this argument, apparently because doing so would require it to interpret the word "compile." *See Towne v. Allegheny Cnty.*, ___ A.3d ___ (Pa. Cmwlth., 98 C.D. 2025, filed Apr. 23, 2026), slip op. at 14 n.14. As discussed below, the County violated its express statutory duties even if we accept the County's preferred definition of

Section 1309 of the Pennsylvania Election Code (Election Code)[2] provides as follows:

(a) All official absentee ballots, files, applications for such ballots and envelopes on which the executed declarations appear, and all information and lists are hereby designated and declared to be public records and shall be safely kept for a period of two years, **except that no proof of identification shall be made public**, nor shall information concerning a military elector be made public which is expressly forbidden by the Department of Defense because of military security.

(b) For each election, **the county board shall maintain a record of the following information**, if applicable, for each elector who makes application for an absentee ballot:

(1) The elector's name and voter registration address.

(2) The date on which the elector's application is received by the county board.

(3) The date on which the elector's application is approved or rejected by the county board.

---

"compile." Moreover, the word "compile" has a readily understandable, plain language meaning that does not prevent the Court from discerning the parties' rights and duties.

These points aside, I am not as concerned as the Majority that a court may not consider a request for mandamus relief if ruling on the request would require it to interpret a statute. *See Kegerise v. Delgrande*, 183 A.3d 997, 1004 (Pa. 2018) (interpreting a statute to determine "whether mandamus lies in the instant case"); *A.S. v. Pa. State Police*, 143 A.3d 896, 903 n.7 (Pa. 2016) (reasoning the appellant did not dispute that mandamus relief would be appropriate "if we were to sustain [the] appellee's reading of the statute. The question thus focuses narrowly on the proper construction"); *Fagan v. Smith*, 41 A.3d 816, 818 (Pa. 2012) (per curiam) (explaining mandamus relief is available "to compel the performance of official duties whose scope is defined as a result of the mandamus action litigation. Thus, . . . 'mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law'") (quoting *Volunteer Firemen's Relief Ass'n of City of Reading v. Minehart*, 204 A.2d 476, 479-80 (Pa. 1964)) (citation omitted); *Seeton v. Pa. Game Comm'n*, 937 A.2d 1028, 1034 (Pa. 2007) (explaining "the courts are an appropriate destination, and mandamus an appropriate remedy, to direct the Commission to comply with its statutory mandate to the extent it misapprehends it").

[2] Act of June 3, 1937, P.L. 1333, *as amended*, added by Section 11 of the Act of March 6, 1951, P.L. 3.

(4) The date on which the county board mails or delivers the absentee ballot to the elector.

(5) The date on which the elector's completed absentee ballot is received by the county board.

(c) The county board shall **compile the records** listed under subsection (b) and make the records publicly available upon request within forty-eight hours of the request.

25 P.S. § 3146.9(b) (emphasis added).[3]

The Majority presents Towne's argument as though he is requesting electronic copies of information that was otherwise available to him on paper. To the contrary, Towne argues the County failed to maintain and compile **accurate information** and, in some cases, **failed to maintain and compile the required information** at all. *See* Towne's Br. at 9, 21, 25-35. For example, the County concedes it did not maintain registered addresses of voters applying for mail-in and absentee ballots for the 2020 General Election and instead provided Towne with addresses where the ballots were supposed to be mailed. County's Br. at 22-23. Further, the County provided Towne with a list of registered voters and their addresses as of April 2022. *Id.* This list did not include anyone who voted in the 2020 General Election and later moved out of the County or died. *Id.* If a voter moved to a new address in the County, only his or her most recent address was included in the list. *Id.*

More alarmingly, the County concedes it did not maintain information about rejected ballot applications but instead invited Towne to visit its warehouse and view boxes containing approximately 36,000 rejected paper ballot applications in person. County's Br. at 23. The first problem with this approach is that it excluded rejected

---

[3] Section 1307-D of the Election Code, added by Section 8 of the Act of October 31, 2019, P.L. 552, 25 P.S. § 3150.17, is substantively identical and deals with mail-in ballots.

ballot applications that voters submitted online. David Voye (Voye), Manager of the County's Elections Division, testified as follows:

> [Counsel for Towne:] I apologize for shifting gears. We talked about the online applications for a ballot, do you recall that testimony? And so in the warehouse where the rejected applications were, would those online rejected applications be in those files that the County allowed Mr. Towne to inspect?
>
> [Voye:] No, those were just the paper applications.
>
> [Counsel for Towne:] So for voters who requested a mail-in or an absentee ballot online for the 2020 election, the County didn't allow -- the County doesn't have a hard copy of that that Mr. Towne was able to inspect?
>
> [Voye:] That is correct.
>
> [Counsel for Towne:] And so for those rejected applications, there was -- the County provided no ability for Mr. Towne to view who requested a ballot application online but was rejected?
>
> [Voye:] I'm not sure if a list exists.

Reproduced Record (R.R.) at 835A-36A.

The second problem is that the rejected paper ballot applications included the driver's license and partial Social Security numbers of the applicants, i.e., "proof of identification" as defined in the Election Code.[4] By inviting Towne to its warehouse to view rejected paper ballot applications in the way that it did, the County concedes it **disclosed proof of identification information** that the Election Code directly prohibited it from disclosing. County's Br. at 25-26.

---

[4] *See* Section 102(z.5)(3)(i)-(ii) of the Election Code, 25 P.S. § 2602(z.5)(3)(i)-(ii) (defining "proof of identification" as, in relevant part, "in the case of an elector who has been issued a current and valid driver's license, the elector's driver's license number," and, "in the case of an elector who has not been issued a current and valid driver's license, the last four digits of the elector's Social Security number").

To be sure, Towne also contends the use of the word "compile" in the Election Code indicates the County must collect specified information regarding mail-in and absentee ballots and then place it in a format that can be provided to the public upon request, such as a list. *See* Towne's Br. at 22-28. To "compile" means "to compose out of materials from other documents" and "to collect and edit into a volume."[5] The Merriam-Webster Dictionary 147 (2016). Thus, the plain language of the Election Code supports Towne's argument. But even if we assume the County can "compile" information by accumulating boxes of documents, that does not excuse the County's failure to accumulate all the required information listed in Section 1309(b).

I do not question that the 2020 General Election was uniquely challenging for the County. I also recognize this Court may not be able to provide the relief Towne is requesting. If the County failed to collect certain information in 2020, it may not be able to go back and collect the information now. *See Costa v. Cortes*, 142 A.3d 1004, 1023 (Pa. Cmwlth. 2016) (explaining mandamus relief is improper if the respondent cannot comply). Requiring the County to collect information belatedly may also be burdensome. Nevertheless, because Towne identifies significant problems with the information the County provided to him, and because the Court should not accept an interpretation of the Election Code that excuses the County from complying with its express statutory duties, I cannot join the Majority opinion in its entirety. Accordingly, I concur.

_____
STACY WALLACE, Judge

---

[5] Other definitions include "to translate (a computer program) with a compiler" and "to build up gradually." The Merriam-Webster Dictionary 147 (2016).